IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| EDIFICE CONSTRUCTION COMPANY, INC., a Washington corporation, | No. 79407-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ARROW INSULATION, INC., a Washington corporation; SEATTLE PAINTING SPECIALISTS, INC., a Washington corporation; HENDERSON MASONRY, INC., a Washington corporation; DAVID RICH HENTZEL, JR., an individual; AUTOMATED EQUIPMENT CO. DBA AUTOMATED GATES AND EQUIPMENT CO., a Washington corporation, | |
| Respondents, | |
| SAK & PATCH, INC., a Washington corporation; AQUAGUARD WATERPROOFING LLC, a Washington limited liability company; COMMERCIAL INDUSTRIAL ROOFING, INC., a Washington corporation; HIGHPOINT CONSTRUCTION INC., a Washington corporation; INLAND WATERPROOFING SERVICES, INC., a Washington corporation; SHAMROCK METAL SYSTEMS, INC., a Washington corporation; EMERALD AIRE, INC., a Washington corporation; BOB JOHNSON WOODWORKING, LLC, a Washington limited liability company, | |
| Defendants. | FILED: February 18, 2020 |

CHUN, J. — Edifice Construction seeks to compel subcontractors Henderson Masonry Inc., Arrow Insulation Inc., Seattle Painting Specialists Inc., David Rich Hentzel Jr., and Automated Equipment Co. (collectively, Respondents)[1] to arbitrate construction defect claims. The trial court denied Edifice's motion to compel arbitration with regard to Respondents, determining that the subcontracts did not incorporate the main contracts, which included arbitration provisions. For a court to find incorporation by reference, it must be clear that the parties had knowledge of and assented to the incorporated terms. Because Edifice failed to meet its burden to show that Respondents had knowledge of and assented to the main contracts' terms, we affirm.

## I. BACKGROUND

This case concerns contracts for construction of a residential building in Seattle (Project). Edifice served as the general contractor and Six Degrees Capital Development LLC and Kenneth Woolcott were the Project owners (Owners). The Project had two phases, Phase I and Phase II.

On April 25, 2010, Edifice and Six Degrees entered into a contract for Phase I. They used a modified American Institute of Architects (AIA) Document A102-2007 form. They entered into a contract for Phase II on October 1, 2012, this time using a modified AIA Document A103-2007 form.[2] Both contracts

---

[1] In its Reply brief, Edifice clarified that it does not appeal the trial court's order as it relates to Bob Johnson Woodworking, LLC.

[2] The Respondents acknowledge that the Phase I and Phase II contracts are substantially similar.

(collectively, the main contracts) include a "Binding Dispute Resolution" clause requiring the parties to submit to binding arbitration.

To complete the construction, Edifice contracted some of the work to subcontractors. Paragraph 2 in each subcontract provides that the subcontractors agree as follows:[3]

> To be bound by all laws, government regulations and orders, and all provisions of the Main Contract, and to be bound by the Additional Provisions in Paragraphs (A) through (DD) . . . and all provisions for the main contract and all documents of which it consists. The parties further agree that all of the above mentioned laws, regulations, orders, subcontract and main contract documents are incorporated herein by this reference and expressly made a part of this Subcontract.

The subcontracts also contained a Pass-through clause providing, in part:

> In the event of any dispute or claim between Contractor and Owner which directly or indirectly involves the work performed or to be performed by Subcontractor, or in the event of any dispute or claim between Contractor and Subcontractor caused by or arising out of conduct for which Owner may be responsible, Subcontractor agrees to be bound to Contractor to the same extent the Contractor is bound to Owner by the terms of the Main Contract and by any and all procedures and resulting decisions, findings, determinations, or awards made thereunder by the person so authorized in the Main Contract, or by an administrative agency, board, court of competent jurisdiction or arbitration.

On September 4, 2018, the Owners sent Edifice a Notice of Intent to Arbitrate for alleged defects in the construction of the Project. Edifice, in turn, sent Notices of Intent to Arbitrate to several subcontractors on September 11, 2018. Edifice additionally filed a lawsuit against the involved subcontractors in

---

[3] The subcontractors each signed two subcontracts, one corresponding with the Phase I main contract and another corresponding with the Phase II main contract. The parties agree that the subcontracts at issue are substantially similar. Except for Bob Johnson Woodworking, LLC, all of the subcontractors signed the same form of agreement.

King County Superior Court on September 25, 2018.

On November 6, 2018, Edifice moved to compel arbitration. Subcontractor Henderson Masonry filed the initial opposition to the motion. Several other subcontractors, including the other Respondents, joined Henderson Masonry in opposing the motion.

On November 26, 2018, the trial court issued an order denying Edifice's motion to compel arbitration as to Respondents. Edifice appeals.

## II. ANALYSIS

Edifice argues that the subcontracts require arbitration because they expressly incorporated the main contracts. Respondents contend that the subcontracts did not incorporate the main contracts because Edifice failed to show that they knew of and assented to the terms of the main contracts.[4] We agree with Respondents.

We review de novo a trial court's decision denying a motion to compel arbitration. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009).

---

[4] Edifice argues that Respondents claim for the first time on appeal that they did not know of or assent to the incorporated terms, and that we should thus not consider the argument. But Respondents' contention relates to its argument that the subcontracts did not incorporate the main contract, which they made to the trial court. If an argument raised for the first time on appeal arguably relates to an issue raised in the trial court, we may exercise our discretion to consider newly-articulated theories for the first time on appeal. Mendoza v. Expert Janitorial Services, LLC, 11 Wn. App. 2d 32, 48 n.14, 450 P.3d 1220 (2019). Additionally, even if Respondents did raise the issue for the first time on appeal, they argue that the trial court could not compel arbitration because Edifice did not put forth sufficient evidence to establish an agreement to arbitrate. Under RAP 2.5(a)(2), a party may raise for the first time on appeal the error that the opposing party failed to establish facts upon which we can grant relief. Accordingly, we address Respondents' argument.

Parties to a contract may incorporate by reference terms of another contractual agreement to which they are not both parties. W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App. 488, 494, 7 P.3d 861 (2000). "Incorporation by reference must be clear and unequivocal." Ferrellgas, 102 Wn. App. at 494. Where "the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." Satomi, 167 Wn.2d at 801. The parties do not need to physically attach a document to a contract to incorporate it by reference. Ferrellgas, 102 Wn. App. at 498-99. Still, it must be clear that the parties had knowledge of and assented to the incorporated terms. Ferrellgas, 102 Wn. App. at 494-95. The party claiming incorporation by reference bears the burden of proving it. Baarslag v. Hawkins, 12 Wn. App. 756, 760, 531 P.2d 1283 (1975).

Respondents concede that the subcontracts "purport[] to incorporate provisions of the Main Contract." But they correctly assert that Edifice has not offered any evidence that they knew of or assented to the terms of the main contracts. Edifice relies on Ferrellgas to argue that it did not need to attach the main contracts to the subcontracts to incorporate them. Yet Edifice still needed to meet its burden of demonstrating that Respondents knew of and assented to the incorporated terms. In Ferrellgas, the party met this burden by showing that, though it did not attach the incorporated contract, the opposing party knew the incorporated contract was an AIA Document A201 form and that this was "a standard form used by owners and contractors." 102 Wn. App. at 497. Based on

this evidence, the court determined that the other party was aware of the general conditions of the incorporated contract. Ferrellgas, 102 Wn. App. at 497.

By contrast, Edifice presents no evidence that Respondents saw the main contracts, knew what AIA forms the main contracts involved, or that the AIA forms used were standard in the industry. Indeed, based on the record, Respondents were not aware of the AIA forms used in the main contracts until Edifice sent the Notices of Intent to Arbitrate. Because Edifice does not meet its burden to show that the subcontracts incorporated the main contracts, and does not assert any other contractual basis for arbitration, we determine the trial court did not err by denying Edifice's motion to compel arbitration.[5]

Affirmed.

_Chun, J._

WE CONCUR:

_Mann, ACJ_                        _Dwyer, J._

---

[5] We note that, even if the subcontracts had incorporated the main contracts, we would still affirm. While the parties dispute the scope of the Pass-through clause, we assume for the sake of this point that Edifice's broader interpretation that the clause applies "[i]n the event of any dispute or claim between Contractor and Owner which directly or indirectly involves the work performed or to be performed by Subcontractor" is correct. Edifice, however, failed to include in the record the expert report specifying the construction defects the Owners alleged in the dispute. Without this information, we cannot determine whether the dispute directly or indirectly involves work completed by Respondents. As the party presenting the issue for review, Edifice bore the burden of providing an adequate record. See RAP 9.2. While Edifice acknowledged that the record lacked this information, it declined to supplement.

6